UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

VANESSA MITCHELL and
JERICA NUNEZ,
Individually and on behalf of
others similarly situated,

    Plaintiffs,

v.                                          Case No. 8:23-cv-43-CPT

TALLY HO, L.L.C.,
7402 ENTERPRISES, INC.,
KEEZONE PRODUCTIONS, LLC,
and KEITH NORATES, Individually,

    Defendants.
_____/

# **O R D E R**

Before the Court is the parties' *Joint Motion for Approval of FLSA Settlement and to Dismiss the Complaint*. (Doc. 22). After careful review and with the benefit of oral argument, the parties' motion is granted in part and denied in part.

I.

Plaintiffs Jerica Nunez and Vanessa Mitchell initiated this lawsuit in January 2023 against their former supervisor, Defendant Keith Norates, as well as their former employers, Defendants Tally Ho, L.L.C., 7402 Enterprises, Inc., and Keezone

Productions, LLC. (Doc. 1). In their complaint, Nunez and Mitchell asserted minimum wage, unpaid overtime, and retaliation claims under the Fair Labor Standards Act (FLSA or the Act), 29 U.S.C. §§ 201–219, along with claims for battery under state law. *Id*. In support of these causes of action, Nunez and Mitchell averred, *inter alia*, that the Defendants failed to pay Nunez the proper hourly rate for the overtime hours she worked, did not compensate Mitchell for her last week of work, and then fired both of them for challenging the Defendants' allegedly deficient pay practices. *Id.* Mitchell further asserted that Norates "chest bumped" her when she complained to him at their workplace about not receiving full renumeration. *Id*. In their answer, the Defendants largely denied Nunez and Mitchell's allegations and raised several affirmative defenses. (Doc. 16).

In early April 2023, the parties elected to resolve their dispute after engaging in settlement negotiations. (Docs. 20, 22). Under the terms of the parties' accord as clarified at oral argument, the Defendants are to pay Nunez and Mitchell $5,000 and $10,000, respectively, Plaintiff's counsel is to receive a total of $7,500 in attorney's fees and costs, and the Defendants are to bear their own fees and costs. (Docs. 22, 22-1). In exchange for these terms, Nunez and Mitchell are to dismiss their lawsuit against the Defendants with prejudice. *Id*. The parties also agree as part of their resolution to be bound by mutual general releases, confidentiality provisions, and non-disparagement clauses. *Id*.

By way of the instant motion, the parties now ask that the Court approve their stipulated disposition pursuant to *Lynn's Food Store, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982). (Doc. 22).

II.

Congress enacted the FLSA to protect employees from the "inequalities in bargaining power between employers and employees." *Lynn's Food*, 679 F.2d at 1352. To further this purpose, the Supreme Court has placed "limits on the ability of private parties to settle FLSA lawsuits." *Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1307 (11th Cir. 2013) (citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 704–05 (1945)).

In an FLSA action brought directly by a current or former employee for unpaid wages, a district court must evaluate the parties' settlement agreement "for fairness" before dismissing the action. *Id.* at 1306–07 (quoting *Lynn's Food*, 679 F.2d at 1353) (internal quotation marks omitted). Specifically, a district court must determine whether the parties' proposed disposition constitutes a "'fair and reasonable resolution of a bona fide dispute'" under the Act. *Sanchez v. M&F, LLC*, 2020 WL 4671144, at *3 (M.D. Fla. Aug. 12, 2020) (quoting *Lynn's Food*, 679 F.2d at 1355). In rendering this determination, courts within this District often consider the following factors:

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel.

*Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010) (citation omitted).

If a district court finds that a parties' accord reflects a fair and reasonable compromise of genuinely contested issues, it may authorize the parties' agreed-upon disposition "to promote the policy of encouraging settlement of litigation." *Lynn's Food*, 679 F.2d at 1354. District courts, however, are ultimately afforded discretion in deciding whether to approve a parties' proposed resolution of an FLSA action. *Rodrigues v. CNP of Sanctuary, LLC*, 523 F. App'x 628, 629 (11th Cir. 2013) (per curiam) (citation omitted).[1]

The main *Dees* factors implicated by the parties' settlement appear to be the probability of Nunez and Mitchell's success on the merits and the range of their possible recoveries. In their instant motion and at oral argument, Nunez and Mitchell explained that the damages amounts which they accepted for their claims are greater than their original damages figures (which they estimated to be roughly $750 and $850, respectively), and are unquestionably more than what they could have reasonably expected after a trial. *Id*. For their part, the Defendants advised that their determination to settle the action was predicated upon their awareness of the costs and uncertainties associated with fending off the Plaintiffs' allegations. *Id*.

In light of these representations, it is apparent that due to the expense and risks which would attend further litigation, the parties—with the benefit of their lawyers' advice—have concluded that it is in their respective best interests to bring this matter

---

[1] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

to closure based on their agreed-upon terms. Taking into account the particular circumstances of this lawsuit, the parties' counseled decision to resolve the Plaintiffs' claims in this manner provides an appropriate basis for authorizing their settlement agreements. *See Dees*, 706 F. Supp. 2d at 1241 (finding that an FLSA settlement "'will, almost by definition, be reasonable'" where "'the parties are represented by competent counsel in an adversary context'") (quoting *Bonetti*, 715 F. Supp. 2d at 1227).

That the parties' resolution includes general releases does not undermine the fairness or reasonableness of their stipulated disposition. (Doc. 22-1). A number of courts have approved such non-cash concessions in FLSA settlement agreements where they were negotiated for separate consideration and/or where they were applicable to both sides. *See, e.g.*, *Serbonich v. Pacifica Fort Myers, LLC*, 2018 WL 2440542, at *3–4 (M.D. Fla. May 29, 2018) (observing that "jurists have approved non-cash concessions in FLSA settlement agreements where they have been negotiated for separate consideration or where there [was] a reciprocal agreement that benefits all parties") (citations omitted), *report and recommendation adopted*, 2018 WL 2451845 (M.D. Fla. May 31, 2018); *Garcia v. B&B Trucking Servs., Inc.*, 2017 WL 3207227, at *2 (M.D. Fla. July 12, 2017) (stating that courts in the Middle District of Florida "have approved FLSA settlement agreements accompanied by separate general releases where there is consideration beyond what is due for the FLSA claims"), *report and recommendation adopted*, 2017 WL 3193668 (M.D. Fla. July 27, 2017); *Caamal v. Shelter Mortg. Co., LLC*, 2013 WL 5421955, at *4 (M.D. Fla. Sept. 26,

2013) (finding an FLSA agreement containing a general release to be fair and reasonable where independent consideration for the release was given and collecting cases). Such is the case here. As referenced above and as confirmed at oral argument, Nunez and Mitchell's general releases are accompanied by similar waivers made by the Defendants and are supported by consideration separate and apart from the monies Nunez and Mitchell are to receive for their claims. (Doc. 22-1).

The parties' mutual promises of confidentiality likewise do not render their accord infirm. In arriving at this determination, the Court recognizes that there is case authority that such terms "operat[e] unequally to the benefit of the employer" and frustrate the goals of the FLSA "by 'thwart[ing] the public's independent interest in assuring that employees' wages are fair.'" *Crabtree v. Volkert, Inc.*, 2013 WL 593500, at *4 (S.D. Ala. Jan. 14, 2013) (quoting *Hogan v. Allstate Beverage Co.*, 821 F. Supp. 2d 1274, 1283 (M.D. Ala. 2011) and citing *Dees*, 706 F. Supp. 2d at 1242); *see also Fox v. Servs., Supports & Sols., Inc.*, 2018 WL 7361008, at *2 (M.D. Fla. Dec. 12, 2018) (observing that confidentiality provisions "contravene the legislative purpose of the FLSA"); *Gillard v. Fleetmatics USA, LLC*, 2016 WL 6997167, at *1 (M.D. Fla. Sept. 20, 2016) (same). That said, few, if any, of the courts that have addressed confidentiality clauses have found them "to be 'per se unenforceable and violative of public policy.'" *Seda v. All Fla. Appliance & AC, Inc.*, 2015 WL 3652833, at *2 n.2 (M.D. Fla. June 15, 2015) (quoting *Crabtree*, 2013 WL 593500, at *4). Indeed, courts in this District often approve FLSA settlement agreements notwithstanding the presence of confidentiality

provisions where the agreements are already part of the public record. *See, e.g.*, *id.*; *Miller v. Colonial Grocers, Inc.*, 2015 WL 690615, at *2 n.2 (M.D. Fla. Feb. 18, 2015). As for the Eleventh Circuit, it has declined to issue a categorical opinion on the issue, noting only that district courts have discretion in approving FLSA settlements. *Rodrigues,* 523 F. App'x at 629.

Here, the Court finds that the parties' confidentiality provisions do not negate the fairness or reasonableness of their resolution. This action and the Plaintiffs' settlement agreements can be found on the public docket, thereby diminishing, if not eliminating altogether, the confidentiality clauses' utility and enforceability. *See Housen v. Econosweep & Maint. Servs., Inc.*, 2013 WL 2455958, at *2 (M.D. Fla. June 6, 2013) (recognizing that confidentiality provisions are unenforceable when the settlement agreement is filed on the public docket and citing authority); *DeGraff v. SMA Behavioral Health Servs., Inc.*, 945 F. Supp. 2d 1324, 1330 (M.D. Fla. 2013) (observing that a confidentiality clause is, at least in part, unenforceable due to the public filing of the agreement); *Poulin v. Gen. Dynamics Shared Res., Inc.,* 2010 WL 1813497, at *2 (W.D. Va. May 5, 2010) (stating that "the confidentiality provisions are likely unenforceable in light of the public filing of the [s]ettlement [a]greement").

The Court reaches the same conclusion with respect to the parties' non-disparagement clauses. (Doc. 22-1). Courts within this circuit "routinely reject" such provisions because they run counter to "Congress's intent to ensure widespread compliance with the FLSA." *Ramnaraine v. Super Transp. of Fla., LLC*, 2016 WL

7

1376358, at *3 (M.D. Fla. Mar. 28, 2016) (quoting *Pariente v. CLC Resorts & Devs., Inc.*, 2014 WL 6389756, at *5 (M.D. Fla. Oct. 24, 2014)), *report and recommendation adopted*, 2016 WL 1305353 (M.D. Fla. Apr. 4, 2016). Akin to the approach taken with respect to general releases, however, courts have approved these clauses where they were negotiated for separate consideration and/or extend to all parties. *See, e.g.*, *McKissick v. Marks Cabinetry Servs. Inc.*, 2021 WL 5702355, at *7 (M.D. Fla. Nov. 24, 2021), *report and recommendation adopted*, 2021 WL 5636687 (M.D. Fla. Dec. 1, 2021); *Bell v. James C. Hall, Inc.*, 2016 WL 5339706, at *3 (M.D. Fla. Aug. 16, 2016), *report and recommendation adopted*, 2016 WL 5146318, at *1 (M.D. Fla. Sept. 21, 2016).

At oral argument, the Court questioned the parties' lawyers about the propriety of the non-disparagement provisions. In response, the attorneys represented that separate consideration was negotiated for these clauses. These attestations are sufficient.

As for the matter of attorney's fees, the FLSA requires the Court to review the reasonableness of the parties' proposed fee figure to ensure "both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009) (per curiam). Here, Plaintiffs' counsel explained at oral argument that the agreed-upon fee sum was negotiated independently from the settlement amount,[2] and that it was equal to what he could have obtained under the lodestar

---

[2] Plaintiffs' counsel clarified at oral argument that he will receive $2,250 in fees and costs from Nunez

8

method. These representations are also sufficient. *See Clarke v. Alta Res. Corp.*, 2017 WL 4958771, at *4 (M.D. Fla. Oct. 30, 2017) (finding that the attorney's fees in an FLSA settlement were fair and reasonable where they were negotiated separately from and had no impact on the settlement amount and were less than the lodestar figure); *Bonetti*, 715 F. Supp. 2d at 1228 (providing that reasonableness may be demonstrated by the parties' representation that they agreed to the fee amount separately and without regard to the sum paid to settle the plaintiff's FLSA claim).

The final matter that warrants discussion is the parties' request that the Court retain jurisdiction to enforce the terms of their resolution. (Doc. 22). Courts in this District "routinely" reject such requests, "particularly when there is no compelling justification" to grant them. *Herra v. FS Investments of Am., Inc.*, 2021 WL 1602120, at *3 (M.D. Fla. Apr. 8, 2021) (quoting *Madison v. United Site Servs. of Fla., Inc.*, 2018 WL 2211419, at *3 (M.D. Fla. Apr. 18, 2018) (collecting cases)). As the parties have not offered any reason for the Court to maintain jurisdiction over the action, much less a compelling one, the Court is constrained to deny the parties' request. *See id.* (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 382 (1994) (noting that "enforcement of [a] settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction")).

---

and $4,500 from Mitchell for the work he performed on their respective cases leading up to the instant motion, and that he will receive an additional $750 for preparing and arguing the motion itself.

III.

For the reasons set forth above, it is hereby ORDERED:

1.	The parties' motion (Doc. 22) is granted in part and denied in part. The parties' motion is granted to the extent that the Court approves the settlement agreements for Nunez and Mitchell. (Doc. 22-1). The parties' motion is denied to the extent that the Court declines to retain jurisdiction over the action.

2.	The Clerk of Court is directed to dismiss this action with prejudice and to close the case.

SO ORDERED in Tampa, Florida this 8th day of June 2023.

_Christopher P. Tuite_
HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record